## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA

      Plaintiff,

                               Case No. 15-20544-02

v.                             Hon. Denise Page Hood

DEMONDRE MARTIN,

      Defendant.

_____/

## ORDER GRANTING AMENDED MOTION TO SUPPRESS (DOC. 41) AND GRANTING IN PART AND DENYING IN PART MOTION TO SUPPRESS (DOC. 36)

## I.    INTRODUCTION AND BACKGROUND

Defendant Demondre Martin filed a two motions to suppress. (Doc 36 ; Doc 41). The Motions are fully briefed. For the following reasons the Court grants Defendants Amended Motion to Suppress (Doc. 41) and Grants in Part and Denies in Part Defendant's Motion to Suppress (Doc. 36).

Defendants Miller and Martin were indicted on September 1, 2015. The indictment alleges that Miller and Martin engaged in a conspiracy to possess and distribute controlled substances, mainly heroin and cocaine base in violation of 21 U.S.C. §§ 841, 846. The indictment charges Miller with eleven counts of

distribution of controlled substances, heroin and cocaine base, in violation of 21 U.S.C. 841, and two counts of felon in possession of a firearm in violation of 18 U.S.C. § 922. The indictment charges Martin with two counts of distribution of controlled substance, heroin, in violation of 21 U.S.C. § 841, one count of possession with intent to distribute controlled substances, heroin and cocaine base, in violation of 21 U.S.C. § 841, and one count of felon in possession of ammunition in violation of 18 U.S.C. § 922. The indictment contains a forfeiture allegation regarding the firearms and ammunition.

The ATF was conducting an investigation of drug trafficking. It alleges that Miller is a drug dealer and Martin is Miller's supplier. The application for the search warrant was mostly supported by ATF Special Agent Michael DeVantier's interaction with a confidential informant (ATF-1) who allegedly made several controlled narcotic buys from Miller. DeVantier's affidavit states that while Miller is a drug dealer, Martin is his supplier.

In DeVantier's affidavit it states that ATF-1 arranged and completed several controlled  buys from Miller. For instance, on February 25, 2015,  Miller did not have a sufficient amount of the drugs that ATF-1 requested, accordingly, Miller advised ATF-1 that he needed to contact his supplier for more drugs. In the presence of ATF-1, Miller allegedly called Martin, who stated that he would be

2

arriving in a few minutes. After a few minutes, a burgundy Chevy Impala, later determined to be registered to Martin, arrived on the scene. Miller got in the Chevy and shortly exited.  After the exciting the Chevy, Miller gave ATF-1 the remaining amount drugs. The driver of the Chevy Impala was later identified as Martin (Doc. 36-2 at 12 -13).

Again on March 2, 2015, ATF-1 arranged for a control buy of drugs from Miller. ATF-1 met up with Miller, who stated that he did not have a sufficient amount of drugs to sell to ATF-1. Once again, Miller allegedly called Martin, who stated he would be on the scene in a few minutes. ATF agents set up surveillance outside of Martin's address on 11110 Wilshire. An ATF agent witnessed Martin leave the Wilshire address drive to 5770 Antoine in the burgundy Chevy Impala and go inside. Martin soon exited 5770 Antoine and drove to Miller's location. ATF-1 called the ATF and stated that  Miller would meet with his supplier in the back of a building. Simultaneously, ATF agents witnessed Miller enter and shortly exit Martin's Chevy Impala. When Miller met up again with ATF-1, he gave ATF-1 the requested amount of drugs. (Doc. 36-1 at 12-13).

Magistrate Judge Grand signed the application for a search warrant seeking permission for law enforcement to search a burgundy Chevy Impala registered to Martin, and two houses, one located at11110 Wilshire and the other on 5770 St.

3

Antoine in Detroit. ATF executed the warrants and found drugs, digital scales, narcotic packaging materials, and currency.

Martin filed a motion to suppress evidence obtained as a result of the warrant. (Doc. 36). He filed a supplemental brief arguing that the tracking warrant ATF obtained from a Magistrate Judge at 36th District Court was not supported by probable cause.  (Doc. 41). For both warrants, he contends they are not supported by probable cause, and fail to establish a sufficient nexus between the places to be searched and the evidence obtained as a result of the warrant. Martin also notes that the warrant links Miller to more criminal activity than it does to Martin. According to Martin, the affidavit only reveals that Miller entered and exited Martin's car. As a result, Martin contends the exclusionary rule must be applied to suppress the evidence.

The Government responded arguing that the warrant is supported by probable cause and established a sufficient nexus. It also contends that the tracking warrant was validly issued and supported by probable cause.

## II.   STANDARD OF REVIEW

Generally a search or seizure must be made pursuant to a valid warrant. *Katz v. United States*, 389 U.S. 347, 357 (1967).  In determining that there is probable cause to issue a search warrant, a judicial officer must have "reasonable

grounds for belief" that evidence will be found that can justify the issuance of a search warrant. *United States v. Thomas*, 604 F.3d 300, 307 (6th Cir. 2010). (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.' " *United States v. Henry*, 299 F. App'x 484, 486 (6th Cir. 2008) . Probable cause exists "when there is a 'fair probability' . . . that contraband or evidence of a crime will be found in a particular place." *United States v. Helton*, 314 F.3d 812 (6th Cir. 2003) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). "The circumstances must indicate why evidence of illegal activity will be found 'in a particular place.' " *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.2004). In other words, a nexus must exist between the place searched and the evidence sought. *Id.* The affidavit need not show sufficient allegations to support a finding that criminal activity is *actually* occurring at that location, but must include allegations *sufficient to show a link* between probable criminal activity and that specific location" *United States v. Khami*, 362 F. App'x 501, 504 (6th Cir. 2010) (emphasis added).

Regarding confidential informants, "the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable." *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001). However, if a

confidential informant's reliability has not been established, "courts insist that the affidavit contain substantial independent police corroboration." *United States v. Henry*, 299 F. App'x 484, 486 (6th Cir. 2008). Independent police corroboration may be established by a police-monitored controlled buys. *Id* at 487.   See also, *United States v. Coffee*, 434 F.3d 887, 894 (6th Cir.2006) (affirming the district court's conclusion that even though there were no statements in the affidavit about the reliability of the CI, "[the officer's] statements that he set up the controlled buy and took necessary precautions before and after the orchestrated purchase adequately corroborated the CI's information and, thus, provided sufficient probable cause for the issuance of the search warrant").

In addition, "an officer's 'training and experience' may be considered in determining  probable cause"  *United States v. Crockett*, 548 F. Supp. 2d 435, 441-42 (E.D. Mich. 2008)(citing *Texas v. Brown*, 460 U.S. 730, 742–43 (1983); *U.S. v. Martin*, 920 F.2d 393, 399 (6th Cir.1990)).

A court must give great deference to the magistrate's determination that probable cause exists and not set aside the decision unless it was made arbitrarily. *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986). When reviewing the sufficiency of an affidavit underlying a warrant, the Court must consider the veracity, reliability, and basis of knowledge for the information as part of the

6

totality of the circumstances.  *Illinois v. Gates*, 462 U.S. 213, 239 (1983); *United States v. Helton*, 314 F.3d 812, 918 (6th Cir. 2003).  The totality of the circumstances tests requires the Court to examine each factor together and not standing alone.  *United States v. Smith*, 182 F.3d 473, 482 (6th Cir. 1999) (quoting *Gates*, 462 U.S. at 230).  Each element should be viewed as "closely intertwined issues that may usefully illuminate the commonsense, practical question of whether an informant's tip establishes probable cause."  *Id*.

### III.   DISCUSSION

#### A.    Tracking Warrant

Defendant contends that the tracking warrant is invalid because: (1) it was issued by a state court judge and not a federal judge; and (2) the warrant was not supported by probable cause. The Government contends that a state magistrate judge can issue a tracking warrant, and cites a portion of Rule 41, "Rule 41 ... provides that a *tracking device* can be issued based upon a warrant be a federal law enforcement officer by a magistrate judge with authority in the district - or if none is reasonable available, a judge of a state court of record in the district, outside the district, or both." Doc. 42 at 21. The Government failed to cite any authority - statutory or case law- to support its proposition.

Federal Rule of Criminal Procedure 41(B)(4) states:

> a magistrate judge with authority in the district has authority to issue a
> warrant to install within the district a tracking device; the warrant may
> authorize use of the device to track the movement of a person or property
> located within the district, outside the district, or both.

Fed. R. Crim. P. 41(B)(4).

> The 2006 Advisory Committee Notes state:

> Because the authorized tracking may involve more than one district or state,
> the Committee believes that only federal judicial officers should be
> authorized to issue this type of warrant. Even where officers have no reason
> to believe initially that a person or property will move outside the district of
> issuance, issuing a warrant to authorize tracking both inside and outside the
> district avoids the necessity of obtaining multiple warrants if the property or
> person later crosses district or state lines.

Fed. R. Crim. P. 41 2006 Amendment Subdivision (b) Advisory Note.

The Government cites no case law to support its position that a state court

judge can issue a tracking warrant under Rule 41(b)(4). A plain reading of Rule

41(b)(4) fails to show that a state court judge has authority to issue a tracking

warrant. The rule does not mention anything about state court judges. The

Advisory Notes are clear that the Committee believes only federal magistrate

judges should issue tracking warrants due to the possibility of the property moving

across district or state lines. Fed. R. Crim. P. 41(B)(4) 2006 Amendment Advisory

Note.

In addition, it appears to the Court the ATF agents made no attempts to

comply with the Rule 41(b)(4)'s requirements by asking a federal magistrate judge

to issue the tracking warrant for this federal investigation. There is no evidence that the a federal magistrate judge was not available. While not directly on point, the Court found a Sixth Circuit case addressing violations of Fed.R.Crim.P. 41. According to the Sixth Circuit, "(v)iolations of Rule 41 alone should not lead to exclusion unless (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) *there is evidence of intentional and deliberate disregard of a provision in the Rule*." *United States v. Searp*, 586 F.2d 1117, 1125 (6th Cir. 1978)(emphasis added); *United States v. Burke*, 517 F.2d 377, 387 (2d Cir. 1975). *See also, United States v. Hersman*, No. 2:13-CR-00002, 2013 WL 1966047 (S.D.W. Va. May 10, 2013)(relying on *Searp* to examine whether state court judge can issue a tracking warrant).

During the April 22, 2016, hearing on this matter, the Government noted it is common practice for the federal agents to seek tracking warrants from state court judges for federal investigations because it is allegedly more convenient - even though the distance from the state court in which this tracking warrant was issued is less than a 15 minute walk from the federal courthouse with federal magistrate judges explicitly authorized to issue such warrants. The fact that federal agents regularly go to state courts for tracking warrants, rather than federal courts for

9

mere convenience may be indicative of a common practice of circumventing the established requirements of Rule 41(b)(4).

Even so, the search warrant was not supported by sufficient probable cause. During the alleged February 25, 2015 transaction Miller is alleged to have obtained drugs from the burgundy Impala. On the next day, February 26, 2015, federal agents sought the tracking warrant claiming that Martin would use the vehicle in further drug transactions. However, at that time the burgundy vehicle had been used in only one transaction and it had not traveled anywhere but to the alleged drug transaction at 3650 Lincoln in Detroit, and then from there, to a parking lot and then to a BP gas station. Only after the tracking warrant was issued was the vehicle involved in another alleged drug transaction on February 27, 2015. No independent police corroboration of either ATF-1's statements about the supplier or physical surveillance support the claim that the car was going back and forth selling drugs. This is insufficient to support a tracking warrant.

Accordingly, evidence obtained as a result of the Tracking Warrant is suppressed.

### B.   Affidavits and Warrants to Search 11110 Wilshire and Martin's Burgundy Chevy Impala

Magistrate Judge Grand issued a warrant to search Martin's registered address at 11110 Wilshire (Doc. 36- 1) and his burgundy Chevy Impala (Doc. 36-

3) . To establish probable cause for the warrants, the Government points to the fact that the ATF agent has numerous years of experience investigating drug trafficking. The confidential informant, ATF-1, has participated in numerous drug investigations. There were two controlled buys in which Martin was witnessed driving a burgundy Chevy Impala. A LEIN check revealed that burgundy Chevy Impala is registered to Martin's address on Wilshire. Prior to one of the controlled buys, Martin was seen exiting the 11110 Wilshire address.

The Sixth Circuit noted "the inference that a drug dealer keeps evidence of wrongdoing in his residence can be drawn permissibly if,"the independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes." *United States v. Kenny*, 505 F.3d 458, 461 (6th Cir. 2007). This logic extends to drug manufacturers. *Id*.

The warrants to search the Chevy Impala and 11110 Wilshire were supported by probable cause. Martin has a prior conviction for drug dealing and ATF-1 identified Martin as Miller's drug supplier. Prior to a controlled buy, Martin was seen exiting his Wilshire address and meeting with Miller in the burgundy Chevy Impala. When Miller exited the vehicle and returned to the confidential informant, Miller delivered drugs. The totality of the circumstances reasonably leads one to believe that Martin retrieved drugs from his car or his home on

11

Wilshire street.

Considering the affidavit under the totality of the circumstances- Martin's prior drug conviction, the ATF's agent's experience, the confidential informant seeminly reliable information, the controlled buys, ATF agents' observations of Martin driving the burgundy Chevy Impala and 11110 Wilshire is registered to Martin - the Court finds the warrants were supported by probable cause and there was a sufficient nexus between Martin and the evidence sought at the Wilshire address and in the burgundy Chevy Impala.

### C.    Affidavit and Warrant to Search 5770 St. Antoine

Defendant challenges the warrant issued to search 5770 St. Antoine, like the proceeding challenges, Martin argues that the afffdavit does not establish probable cause. The Court agrees.

An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a "bare bones" affidavit. *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). To determine whether an affidavit is "bare bones," the court should exclusively focus on the statements contained within the affidavit itself. *Id*. The affidavit only mentioned that prior to allegedly delivering narcotics, Martin on one occasion left his registered address on Wilshire and went to 5770 St. Antoine.

12

Martin proceeded inside of 5770 St. Antoine and a short time later he left. (Doc. 36-2 at 15-16). The affidavit does not describe how Martin was able to enter the home - did he have a key, suggesting dominion over the residence? Or did he have to knock for someone let him in? The affidavit does specifically state how long Martin stayed inside the St. Antoine address - did he stay there for only a few seconds,  minutes, an hour? The affidavit does not state who the residence belongs to -  is 5770 St. Antoine the address of another known or suspected drug dealer? Is it the address of an elderly relative? Or possibly a friend? The affidavit does not indicate that Martin was observed leaving 5770 St. Antoine with anything in his hands that would indicate he was carrying drugs. The affidavit merely says he entered the residence and left a short time later.

The Government would like the Court to draw the inference that Martin conducted illegal activity inside the St. Antoine address, but there is no evidence aside from law enforcement's belief that Martin conducted the alleged illegal activity. The fact that the vehicle frequented the 5700 block of St. Antoine does not aid in establishing probable cause since the tracking warrant is invalid. The information contained in the four corners of the affidavit does not establish a sufficient nexus linking 5770 St. Antoine to any illegal activity. Therefore, evidence gathered as a result of searching 5770 St. Antoine is suppressed.

13

## III.    CONCLUSION

Martin's Amended Motion to Suppress (Doc. 41) is **GRANTED**; the tracking warrant is deemed invalid. Martin's Motion to Suppress Evidence (Doc. 36) is **GRANTED IN PART** and **DENIED IN PART**. Evidence obtained based on the search warrant for 5770 TS. Antoine and abased on the tracking warrant is suppressed. Evidence obtained from the 11000 Wilshire address is not suppressed.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  August 26, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 26, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

14